**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| YESI ANDERSON PASTOR-GOMEZ,<br><br>Petitioner,<br><br>v.<br><br>JASON JOHNSON, et al.,<br><br>Respondents. | ) | Case No. 6:26-cv-03645-SRB |

**ORDER**

Before the Court is Petitioner Yesi Anderson Pastor-Gomez ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (Doc. #1.) For the reasons below, the Court GRANTS the Petition.

## I. FACTUAL BACKGROUND

Respondents do not dispute the following facts provided in the Petition. Petitioner allegedly entered and has resided in the United States since approximately 2011. Petitioner was arrested on September 24, 2026, and remains detained in the Greene County Jail in Springfield, Missouri.

Petitioner filed the Petition on October 8, 2026. The Petition asserts one claim for relief: Violation of Fifth Amendment Right to Due Process. Petitioner alleges that "his current detention is unlawful and a violation the Due Process clause" and he requests that this Court order his immediate release from custody. (Doc. #1, ¶ 1.) Respondents timely filed their response in opposition to the Petition. The parties' arguments are addressed below.[1]

[1] On March 25, 2026, the Eighth Circuit issued its decision in *Avila v. Bondi*, Appeal No. 25-3238, 2026 WL 819258, slip op. (8th Cir. March 25, 2026), which held that people classified as "applicants for admission" under 8 U.S.C. § 1225(a)(1) are subject to § 1225(b)(2)'s mandatory detention regime. Here, Petitioner acknowledges *Avila* but argues

## II. DISCUSSION

Petitioner argues that his "continued detention without any individualized review has crossed the constitutional threshold." (Doc. #1, ¶ 41.) According to Petitioner, "[a]s the duration of Petitioner's detention increases, so does the weight of his liberty interest, and the process he is constitutionally owed." (Doc. #1, ¶ 42.) The Government argues in part that "lawful admission—not physical entry—is the touchstone for when aliens gain due process interests that could potentially require procedures beyond what Congress has provided." (Doc. #4, p. 6.) As explained below, the Court agrees with Petitioner and finds that Respondents' continued detention of Petitioner violates procedural due process. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As an initial matter, the Government argues that Petitioner's procedural due process claim fails because "by enacting Section 1225, Congress sought to eliminate the preferential treatment of aliens who violate the country's immigration laws by entering illegally and evading detection. Under Pastor-Gomez'[s] rationale, aliens who violate federal law would enjoy greater constitutional protections with respect to their removal proceedings than those who comply with it." (Doc. #4, p. 7.) In support of this argument, the Government cites, among other cases, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). "However, [*Thuraissigiam*] recognize[s] limited procedural rights in the admission context, not the detention context, and [is] factually distinct from the case at hand." *Marin-Mendoza v. Arnott*, No. 6:26-cv-3185-MDH, 2026 WL 1020817, at *2 (W.D. Mo. Apr. 15, 2026). For example, in *Thuraissigiam*, the Supreme Court rejected a noncitizen's argument that his expedited removal proceeding violated

---

his detention violates the Due Process Clause of the Fifth Amendment. The Court finds that *Avila's* construction of § 1225 does not govern the due process claim asserted herein.

due process, and held that the noncitizen "ha[d] only those rights *regarding admission* that Congress has provided by" § 1225. *Id.* (emphasis supplied); *see also Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (Section 1226(c) mandates detention during removal proceedings for a *limited class of deportable aliens*—including those convicted of an aggravated felony.").

Upon review, the Court rejects the Government's arguments that *Thuraissigiam* applies to this case. "As other courts addressing similar arguments have noted, *Thuraissigiam* dealt with a due process challenge to the sufficiency of § 1225's process for expedited removal—not with a challenge to prolonged mandatory detention." *Alvarez v. Noem*, No. 4:26-CV-00729, 2026 WL 522322, at * 4 (S.D. Tex. Feb. 25, 2026) (citing cases). "Since *Thuraissigiam* did not address whether noncitizens mandatorily detained under § 1225(b) have a constitutional due process right to challenge the fact or length of their detention, the Court finds that *Thuraissigiam* does not foreclose Petitioner's due process claim." *Id.* (citation and quotation marks omitted) (cleaned up). The Court agrees with this case law. Consequently, the Court turns to the due process issues raised herein.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Due process is flexible . . . [and] calls for such procedural protections as the particular situation demands." *Jennings v. Rodriguez*, 583 U.S. 281, 312-315 (2018). To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. at 335. Courts must consider the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function

> involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

Here, the first *Mathews* factor weighs in favor of Petitioner. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action"). Petitioner has allegedly resided in the United States for approximately fifteen years and has built a life here. He has a substantial private interest in remaining out of custody both to support his two minor children and to assist his counsel in defending him from removal. Under these circumstances, the Court finds that Petitioner has a strong liberty interest in his freedom from detention.

The second *Mathews* factor, the risk of erroneous deprivation, also weighs in favor of Petitioner. "The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen 'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons' and that the noncitizen is 'likely to appear for any future proceeding.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting 8 C.F.R. § 1236.1(c)(8)). Here, the Court agrees with Petitioner that the risk of erroneous deprivation is substantial where his re-detention occurred without an individualized custody determination. According to Petitioner, "[a] one-time notice served at the initiation of removal proceedings provides no meaningful check on the reasonableness of continued detention. (Doc. #1, ¶ 42.) Petitioner argues that without an opportunity for an individualized haring, "no meaningful mechanism to demonstrate that he poses neither a danger to the community nor a flight risk"

exists. (Doc. #1, ¶ 27.) Respondents do not contend that Petitioner presents a danger or a flight risk; they argue that "[i]ndividualized findings about flight risk and danger are simply irrelevant under the terms of Section 1225(b)(2)(A)[.]" (Doc. #4, p. 5.) The Court finds that the second factor weighs in favor of Petitioner.

Under the third *Mathews* factor, even a weighty private interest must be balanced against the government's interest. Respondents have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live. But those interests do not control under the facts presented here. The record does not show that Petitioner is a flight risk and Petitioner has no criminal history. Thus, the third factor weighs in favor of Petitioner.

The Court finds that the proper remedy for the violation of Petitioner's due process rights is immediate release from custody. Given the weight of the liberty interests at stake and the fact that Petitioner has already been detained for over a month, the Court concludes that immediate release is appropriate. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 499 (S.D.N.Y. 2025) (ordering immediate release from custody after determining that the petitioner's continued detention violated procedural due process).

**III. CONCLUSION**

Based on the above, and on the full record before the Court, IT IS HEREBY ORDERED THAT:

1. Petitioner's Petition for a Writ of Habeas Corpus (Doc. #1) is GRANTED.
2. Respondents shall immediately release Petitioner, but no later than 48 hours from the date of this Order.

3. Prior to Petitioner's release, Respondents must first notify Petitioner's legal counsel within two hours of his impending release and include the location of his release and approximate release time.
4. When Petitioner is released, Respondents must return to him any property, personal effects, and documents that they have taken from him, including identity documents, foreign issued identity documents, and immigration documents.
5. Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release.
6. Respondents shall confirm Petitioner's release with the Court within 72 hours from the date of this Order.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: October 14, 2026